**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ELIZABETH THIERIOT, Individually and as
Trustee of the Elizabeth Thieriot Revocable
Trust, and THE ELIZABETH THIERIOT
REVOCABLE TRUST,

                              Plaintiffs,

           - against -

JASPAN SCHLESINGER HOFFMAN LLP,
STEPHEN P. EPSTEIN, LISA M. GOLDEN,
ALAN K. HIRSCHHORN, and SETH H.
ROSS,

                              Defendants.
-----------------------------------------------------------X

**ORDER**

CV 07-5315 (TCP) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Pending before the Court is Plaintiffs' Motion to Compel production of documents which Defendants' counsel asserts were inadvertently provided to Defendants' expert witness. DE 29. The Court previously deferred ruling on this motion [DE 45] and directed Defendants' counsel to provide additional materials for the Court's review. In response, Defendants provided (1) the Affidavit of Paul R. Williams, Defendants' expert witness [DE 48], and (2) the Affirmation of Paul McDougal [DE 49], attorney for the Defendants in this action, with three emails attached as Exhibits A, B and C. Additionally, the parties have filed other correspondence raising issues related to the motion to compel. *See, e.g.,* DE 42, 44, 50-51. The Court has reviewed all of the documents provided by Defendants pursuant to the directives given in DE 45 as well as the additional correspondence submitted by each party. For the reasons set forth below, Plaintiffs' Motion to Compel is DENIED.

## I. THE SWORN STATEMENTS

### A. Affidavit of Paul R. Williams

In his Affidavit, Defendants' expert, Paul Williams, who was retained to provide an expert opinion regarding the alleged legal malpractice charged in the Complaint (and who himself is a lawyer), states that he was first contacted about this case in June of 2009. Affidavit of Paul R. Williams ("Williams Aff."), ¶ 2. After an initial conversation with Paul McDougal, Defendants' attorney, Williams received a series of e-mails from McDougal with various documents attached. Williams Aff. ¶ 2. These included the pleadings in this case as well as the pleadings from the underlying specific performance action, along with court orders and decisions in both actions, deposition transcripts and other materials submitted to this Court. *Id*.

According to Williams, the Friday before the July 4, 2009 holiday weekend, he printed out all of the attachments to the e-mails on a copier in his firm's office suite and took the materials home to review. *Id*. ¶ 3. While sorting out the documents that weekend, Williams came across "what appeared to be a multi-page letter on Mr. McDougal's firm letterhead to an attorney by the name of Leigh Tuccio, at the law firm of Mendes & Mount." *Id*. ¶ 4. Williams believes the letter was titled a "Case Report" or "Case Summary." *Id*. After looking at the letter, Williams concluded that it was a case or status report from McDougal to his client. Williams states the following:

> I presumed the letter would have contained primarily opinions of counsel, and had not been reviewed by Plaintiff's expert in preparing his report. I therefore concluded that it would not be appropriate for me to read it before rendering an opinion in the case. I do not now recall with certainty what became of the copy but my best recollection at this time is that I discarded it at my home at that time. I affirm that at no time did I read the content of that letter.

2

*Id*. ¶ 5.

In the ensuing weeks, Williams received additional discovery materials from McDougal. Among these materials were transcripts of the parties' depositions and exhibits which were marked at those depositions. *Id*. ¶ 6. As he read through the transcripts, Williams referred to the exhibits as they were mentioned during the testimony. In doing so, Williams noticed a "collection of handwritten notes on several sheets of yellow legal pad paper." *Id*. In looking at the first page of notes, Williams concluded that these were handwritten notes taken during the course of one or more of the depositions. He presumed the notes were taken by McDougal, although he did not recognize the handwriting. Since Williams had complete transcripts of the depositions, he saw no need to attempt to read the handwritten notes and states that he did not do so. *Id*. Williams further states that at the conclusion of his own deposition, which took place in Attorney McDougal's office, he "left Mr. McDougal's original files (including deposition transcripts, exhibits, and any handwritten notes) with Mr. McDougal. At no time before or after that date did I read the content of these notes." *Id*. ¶ 7.

### B. Affirmation of Attorney Paul R. McDougal

Initially, Attorney McDougal confirms that the documents at issue here are a report from his firm to his clients' malpractice carrier (the "Report") and his notes in files containing deposition transcripts (the "Notes") that were inadvertently given to defendants' expert, Paul R. Williams.[1] Affirmation of Paul R. McDougal ("McDougal Aff.") ¶ 2. Attorney McDougal had a conversation with Williams on June 30, 2009 regarding this case and the need for an expert to provide an opinion and a report. At that time, McDougal discussed with Williams the nature of

---

[1] The Report and Notes were sent to the Court by overnight mail for an *in camera* review.

the case, the allegations in the complaint, the defendants' position and the opinions of plaintiffs' legal expert. McDougal Aff. ¶ 3. That same day, McDougal e-mailed Williams the complaint and the expert reports and other materials that plaintiffs' counsel had e-mailed to McDougal earlier in the month. *Id.* The next day, Williams sent McDougal an e-mail setting forth his preliminary impressions of the case. *Id*. ¶ 4. The e-mail is attached as Exhibit A to McDougal's Affirmation and has been produced to the plaintiffs.

On July 2, 2009, McDougal e-mailed Williams 14 additional documents. One of these was the Report at issue here. *Id.* The Report was e-mailed in PDF format as an attachment under the heading "Initial Evaluation Memo.pdf." *Id*. The e-mail is attached as Exhibit B to the McDougal Affirmation and has also been produced to the plaintiffs.

According to McDougal, he and Williams never discussed the opinions in the Report "before Williams was able to form his own independent opinions as expressed in his expert report." *Id*. ¶ 5. McDougal acknowledges that he and Williams did discuss factual items found in the Report, but adds that "these were all items that were referred to in other documents that had been delivered to both experts." *Id*. The Report is a preliminary evaluation of the case which summarizes the facts and proceedings of the instant legal malpractice action, the underlying real estate transaction and specific performance litigation, as well as the allegations in the Complaint. The Report also states an opinion as to the viability of each of the claims of malpractice and discusses the defenses. *Id*. McDougal has no recollection of the Report ever being returned to him. After Williams testified that he had received but not read the Report and had returned it, McDougal spoke to Williams and advised that he had no recollection of the Report being returned to him. *Id.* ¶ 6. Williams told McDougal during that conversation that he

4

believed the copy of the Report was discarded after Williams printed it and that he did not return it to McDougal. *Id*.

As to the Notes, McDougal states that Williams e-mailed him on July 13, 2009, seeking copies of all the deposition transcripts that had been referenced in plaintiffs' expert report. *Id*. ¶ 7. A copy of that e-mail is attached to the McDougal Affirmation as Exhibit C. McDougal sent the transcripts of three defendants by e-mail the next day, July 14. Williams was not able to download the transcripts because of the format in which they were sent. In e-mails exchanged on July 14 and 15, 2009, McDougal and Williams discussed meeting in McDougal's office to get copies of the transcripts, the record on appeal and the appellate briefs. *Id*. ¶ 8. Williams went to McDougal's office on July 15 and picked up the materials. *Id*. ¶ 9. McDougal gave Williams the manila folders in which the individual transcripts were filed. Included in those files were McDougal's Notes taken at the depositions and the exhibits which had been marked at the depositions. *Id*. McDougal states that he and Williams had no conversations concerning the Notes. *Id*. ¶ 10. In fact, they did not talk about the Notes until after Williams was deposed by Plaintiffs' counsel. The Notes were returned to McDougal on the date of Williams' deposition, in front of Plaintiffs' counsel during the course of the deposition. *Id*. ¶ 11. Apparently, there were some inquiries made about the Notes during Williams' deposition. *Id*.

## II. DISCUSSION

Rule 26(a)(2) provides that

> (B) *Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case of one whose duties as

5

> the party's employee regularly involve giving expert testimony. The
> report must contain:
>
> *   *   *
>
> > (ii) The data or other information considered by the witness in forming them . . .

It is well established that Rule 26 requires "disclosure of any document considered by a testifying expert, whether or not the document is otherwise privileged and regardless of whether the expert expressly relies upon the document in formulating his or her opinion." *Amway Corp. v. Proctor & Gamble Co.*, 1:98 cv 726, 2001 WL 1877268, at *1 (W.D. Mich. Apr. 17, 2001) (citing cases). In other words, experts are obligated to disclose information that was relied upon in forming their opinions, as well as "information that was not relied upon, but was considered by the expert." *Schwab v. Philip Morris USA, Inc.*, No. 04-CV-1945, 2006 WL 721368, at *2 (E.D.N.Y. Mar. 20, 2006) (citing *Constr. Indus. Servs. Corp. v. Hanover Ins. Co.*, 206 F.R.D. 43, 50 (E.D.N.Y. 2001)) ("Documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report."); *see also B.C.F. Oil Ref. v. Consol. Edison Co.*, 171 F.R.D. 57, 65 (S.D.N.Y. 1997) (following the 1993 amendments, an expert must disclose "all material *considered by* him, not just material 'known' by him") (emphasis in original).

Plaintiffs rely on *Weil v. Long Island Sav. Bank FSB*, 206 F.R.D. 38 (E.D.N.Y. 2001) and *Construction Industry Services Corp.* for the proposition that the 1993 amendments to Fed. R. Civ. P. 26(a)(2)(B) broadened the communications with a testifying expert that must be disclosed. That assessment is correct and the reliance is proper – as far as it goes. Significantly,

the factual underpinnings of *Weil* are distinguishable. There, the defendant bank moved to compel production of the comments of plaintiff's counsel on drafts of the expert report. *Weil*, 206 F.R.D. at 38. Judge Wall ordered the plaintiffs to produce all documents on their privilege log which represented materials communicated to the testifying experts by the attorneys and *considered by those experts in forming their opinions*. *Id*. at 43 (emphasis added). *Construction Industry Services Corp*., decided by Judge Wall two months after *Weil*, is not to the contrary and is equally distinguishable on its facts. There, Judge Wall held that nothing before the court demonstrated with clarity how the individual who was proffered as a consultant prior to being retained as a damages expert could not have considered, on some level, his comprehensive knowledge of all confidential information regarding the lawsuit. *Constr. Indus. Servs. Corp.*, 206 F.R.D. at 52-53.

The burden of showing that an expert did not consider certain documents in forming his opinion rests with the party resisting the disclosure. *See Schwab*, 2006 WL 721368, at *3. This burden "cannot generally be satisfied by the expert's representations alone." *Id*. "Although an expert's representation as to whether or not he considered a document is not controlling, his testimony that he did not receive, read, review or author a document will negate discovery absent persuasive evidence to the contrary." *Euclid Chem. Co. v. Vector Corrosion Technologies, Inc.*, No. 1:05 CV 80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007) (citing *Amway*, 2001 WL 1877 260, at *1). The burden can be met when the party opposing disclosure provides the court "with affidavits and deposition testimony 'clearly establishing' that the testifying witness never read, reviewed, or considered the subject documents in forming his opinions." *Schwab*, 2006

7

WL 721368, at *3 (quoting *United States Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97 Civ. 6124 , 2002 WL 15652, at *7 (S.D.N.Y. Jan. 7, 2002)) (citation omitted).

Here, Williams' affidavit specifically states his observation that the document appeared to be a case report from McDougal to the carrier and Williams "presumed" that the letter would have contained opinions of counsel which it would not be appropriate for him to read before he rendered an opinion in this case. Williams Aff. ¶ 5. As to the Notes, Williams confirmed that he was already in possession of the complete transcripts of the depositions at the time he first saw the Notes and therefore saw no need to attempt to read the handwriting, which he did not recognize. The Notes were returned to McDougal during Williams' deposition. Id. ¶¶ 6, 7. The Court further points out that Paul Williams, as an attorney, is also an officer of the Court. Plaintiffs have not met their burden here because they have produced no "persuasive evidence to the contrary." *Euclid Chem. Co.*, 2007 WL 1560277, at *4. I therefore find that Williams' sworn statement shows that he did not consider the Report or the interview Notes and, as a result, those materials are outside the scope of Rule 26(a)(2)(B). *See Langbord*, 2008 WL 47 8174, at *2 (expert's sworn statement demonstrates that he did not consider the drafts and interview notes in formulating his opinion, thus placing those materials outside the scope of Rule 26(a)(2)(B)); *see also Aniero Concrete Co., Inc. v. New York City Sch. Constr. Auth.*, 94 Civ. 9111, 2002 WL 257685, at *2 (S.D.N.Y. Feb. 22, 2002) (party could avoid disclosure of documents "by showing that its experts had not 'considered' the Contested Documents *in the course of forming their opinions"*) (emphasis added); *Euclid Chemical Co.*, 2007 WL 1560277, at *4 ("the courts have embraced an objective test that defines 'considered' as anything received, reviewed, read, or authored by the expert, before or in connection with *the forming of his opinion . . . .*") (emphasis

added); *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 464 (E.D. Pa. 2005) ("[P]laintiff must disclose all materials, regardless of privilege, that plaintiff's expert generated, reviewed, reflected upon, read, and/or used in *formulating his conclusions*, even if the materials were ultimately rejected by the expert in reaching his opinions.") (emphasis supplied). By contrast, the Report to defendants' carrier in the instant case, the disclosure of which both sides concede was inadvertent, was not considered by the defendants' expert in forming his opinions as set forth in his affidavit and as addressed at his deposition.

Defendants have presented the Court with an affidavit from the expert and an affirmation from counsel satisfactorily establishing that the testifying expert never read, reviewed or considered the subject documents in forming his opinion. "In such circumstances, the rationale for a broad reading of the disclosure requirements of Rule 26(a)(2) disappears." *Amway Corp.*, 2001 WL 1877268, at *1. As the court in *Amway* observed,

> [i]f an expert witness has read a document provided by the client, effective cross-examination is guaranteed by finding a waiver of privilege, even if the testifying expert eschews any formal "reliance" on the document. Where, however, the witness clearly did not read or review the documents, the purpose for the rule in favor of waiver vanishes.

*Id*. (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, at 640 (D. Kan. 2000) ("Without proving disclosure, plaintiffs cannot prove waiver.")).

Having reviewed the affirmation of Defendants' counsel and the affidavit of the expert witness [DE 48, 49] as well as the documents provided for an *in camera* inspection, and in accordance with *Amway Corp.*, which this Court finds persuasive, I am DENYING Plaintiff's

Motion to Compel the production of the specific documents that Defendants' counsel produced to the expert witness.

Additionally, I have reviewed the parties' arguments regarding the timeliness of Defendants' submissions of supplemental materials [DE 50, 51] and I am accepting these submissions. Further, after considering the assertions and arguments posed by Plaintiffs' counsel regarding the expert's handling of documents [DE 50], I find that the actions of Defendants' expert do not constitute "spoliation" under current Second Circuit case law based on all of the circumstances here. Defendants cannot be held responsible on a spoliation theory where Defendants had no duty to produce the Report and Plaintiffs were not entitled to disclosure of the Report in the first instance. Moreover, Defendants' counsel has provided an affirmation, under penalty of perjury, that a copy of the Report is in his files and on his computer – and has been submitted to the Court. *See* Supplemental Affirmation of Paul McDougal [DE 51], ¶ 4.

**SO ORDERED.**

Dated: Central Islip, New York
September 28, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge