UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ELIZABETH THIERIOT, individually and as
TRUSTEE of the ELIZABETH THIERIOT
REVOCABLE TRUST, and the ELIZABETH
THEIRIOT REVOCABLE TRUST,

      Plaintiffs,

  -against-

JASPAN SCHLESINGER HOFFMAN, LLP,
STEPHEN P. EPSTEIN, LISA M. GOLDEN,
ALAN K. HIRSCHHORN, and SETH H. ROSS,

      Defendants.
-----------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 27 2013 ★
LONG ISLAND OFFICE

07-CV-5315 (TCP)

MEMORANDUM
AND ORDER

PLATT, District Judge.

  Before the Court is defendants' motion for reconsideration of this Court's Order dated March 6, 2013. Defendant's motion for reconsideration is hereby **GRANTED** because, as explained in detail below, plaintiff's trust was invalid at its creation. As a result, any conveyance by plaintiff to the trust was likewise void and plaintiff retained ownership of her real property. Thus, she was the actual owner/seller named in the real estate contract at issue in the state court specific performance litigation. Defendants could not, therefore, raise the lack of ownership defense in that litigation and their failure to do so does not constitute legal malpractice as a matter of law.

  Defendants' counterclaim for legal fees and costs is **GRANTED** to the extent that the sum due them by plaintiff, if anything, will be calculated under a quantum meruit theory.

## I. Relevant Background

  The detailed facts of this case are set forth in this Court's Order dated March 6, 2013 (DE 76) ("Order") and will only be repeated here as necessary. Defendants move for reconsideration

of the Order denying summary judgment on plaintiff's claims and defendant's counterclaims.

Plaintiff Elizabeth Thieriot ("plaintiff") is the sole trustee and sole beneficiary of a revocable trust established December 21, 2001. Plaintiff's trust was amended on March 8, 2002 and April 8, 2003. Plaintiff transferred her real property to the trust which eventually became the subject of a specific performance lawsuit in New York State Supreme Court.

In June 2003, plaintiff accepted an offer to purchase her real property from the Kumars, who became the plaintiffs in the New York State proceeding. Defendant law firm drafted the real estate contract for the sale of the premises and listed plaintiff individually, and not her trust, as the owner/seller. After advising her attorneys that she was unable to obtain certain affidavits required by the title search company, plaintiff declined to go through with the closing for the sale of the property on the basis she could not convey marketable title.

The Kumars then sued her for specific performance in New York State Supreme Court. Plaintiff was represented by defendants in that proceeding. After a bench trial, the Honorable Thomas Feinman, New York Supreme Court, Nassau County, issued a decision holding that the Kumars were entitled to specific performance of the real estate contract. After judgment was entered on behalf of the Kumars, defendants appealed Judge Feinman's decision. The decision granting the Kumars specific performance was ultimately affirmed by New York's Appellate Division. Shortly thereafter, the law firm was discharged and plaintiff's current attorney, Theodore Steingut, was retained by plaintiff. Plaintiff commenced this action alleging, *inter alia*, legal malpractice against defendant law firm in December 2007.

By Order dated March 6, 2013, this Court denied defendants' motion for summary judgment on plaintiff's claims for legal malpractice and rescission of the parties' fee arrangement

and her request for a declaratory judgment that the law firm was not owed any additional fees. Defendants also sought judgment on their counterclaims for the quantum meruit value of their services in the sum of $29,105.16, for failure to pay the unopposed account on demand and for breach of contract, which was also denied pending trial.

With respect to plaintiff's legal malpractice claim, the Court held that there were material issues of fact as to whether the law firm's decision to admit that plaintiff, and not her trust, owned the premises in her answer to the New York State specific performance action constituted malpractice. The Court further held that there were questions of fact with respect to the law firm's decision not to raise the lack of ownership defense in the state lawsuit, i.e., whether the decision was part of a reasonable strategy or if their conduct fell below the standard of due care.

## II. Discussion

### A.   Legal Standard for a Motion for Reconsideration

"The threshold for prevailing on a motion for reconsideration is high." *Nakshin v. Holder*, No. 19 Civ. 1676, 2010 WL 92776, at *1 (2d Cir. Jan. 12, 2010). Thus, reconsideration of a " 'previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.' " *In re Health Management Systems, Inc.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quoting *Wendy's Int'l, Inc. v. Nu-Cape Construction, Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y.

1990); *Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)).

Eastern District of New York Local Rule 6.3 requires that the motion "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." A motion for reconsideration is not a vehicle to reargue "those issues already considered when a party does not like the way the original motion was resolved." *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996). "Moreover, the parties 'may not address facts, issues or arguments not previously presented to the Court,' *U.S. Titan v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (citations omitted), because a motion to reconsider should never act 'as a substitute for appealing from a final judgment.'" *Orlik*, 2010 WL 1379776, at *2 (quoting *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 113 (S.D.N.Y. 1997) (citation omitted). *See In re Worldcom, Inc. Securities Litigation*, 308 F. Supp. 2d 214, 224 (S.D.N.Y. 2004) ("A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision."). Reconsideration, therefore, "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

**B.     Defendants' Motion for Reconsideration**

    **1.     Plaintiff's Legal Malpractice Claim**

Defendants make virtually the same arguments on reconsideration as they did in their motion for summary judgment, i.e., that their strategy not to use the lack of ownership defense was reasonable and that the claim can be determined summarily. Defendants contend that the defense was not viable because plaintiff was the settlor, sole trustee and sole beneficiary of her

revocable trust and, consequently, had the power to do what she was contractually obligated to do: to wit, convey the property. They contend the defense would have been dismissed as meritless or could have subject the plaintiff to sanctions and that raising the defense would appear to be in bad faith at a time when her credibility was crucial.

As in their original motion for summary judgment, defendants do not cite to any case law or statutory authority for their proposition that plaintiff and the trust are one in the same, giving her the power to convey the property in her individual capacity. Their unsupported argument merely begged the question of the value of creating a trust if title to its corpus is so easily set aside and was not considered. In its original Order, the Court also noted Judge Feinman's concern with the identity of the seller in the specific performance action. Accordingly, it held that there was a question of fact as to whether defendants' failure to raise the lack of ownership defense was part of a reasonable strategy or if it fell below the standard of due care owed by attorneys to their clients. Likewise, the Court also held that there was a material issue of fact as to why defendants opted to admit that plaintiff, and not the trust, owned the property in her answer to the Kumars' specific performance action.

A trust, however, "contemplates the holding of property by one for the benefit of another, . . . [and consequently,] the same person may not at the same time be both sole trustee and sole beneficiary of the same interest." *Weeks v. Frankel*, 90 N.E. 969, 971 (N.Y. 1910). On the other hand, revocable trusts do not merge or become invalid when "a person, including but not limited to the creator of the trust, is or may become the sole trustee and the sole holder of the present beneficial interest therein, *provided that one or more other persons hold a beneficial interest therein.*" NY Est. Powers & Trusts § 7-1.1 (emphasis added). *See In re Fontanella's Estate*, 304

N.Y.S.2d 829, 831 (N.Y. App. Div. 1969) ("There are four essential elements of a valid trust of personal property: (1) a designated beneficiary; (2) a designated trustee not the beneficiary; (3) a fund or other identifiable property; and (4) the actual delivery of the fund or other property to the trustee with the intention of passing legal title thereto to him as trustee." (citing *Brown v. Spohr*, 73 N.E. 14, 16 (N.Y. 1904)).

Defendants have repeatedly represented that plaintiff is the settlor, sole trustee and sole beneficiary of her trust.[1] The trust, then, was invalid at the time of its creation because plaintiff was the sole trustee and sole beneficiary. Consequently, any conveyance by plaintiff to the trust was void and the trust did not hold title to the property. Under these circumstances, plaintiff may not use the lack of ownership defense because in actuality, she is the owner/seller and was the proper signatory to the real estate contract with the Kumars. As a result, defendants cannot be held liable for failing to raise the defense in the specific performance litigation and there is no longer any question of fact as to whether they should have done so.

With respect to plaintiff's other allegations of malpractice, the Court originally focused on what it saw as the obstacles to granting defendants' motion for summary judgment on the legal malpractice claim. Turning now to plaintiff's other allegations in her complaint, she complains that defendants were negligent by failing to communicate to the Kumars' attorney plaintiff's reasons for not attending the real estate closing. Had defendants properly communicated with the title company, according to the complaint, it may have waived its demand for an affidavit from plaintiff's husband. As defendants point out, however, this

---

1. Who initially created, or attempted to create, the trust or made the subsequent amendments is unclear from the allegations.

allegation from plaintiff's legal malpractice claim fails the "but for" test, i.e., plaintiff would have to allege that but for defendants purported negligence in not advising the Kumar's attorney that plaintiff was unable to close, the deal would have closed.[2] Plaintiff does not so allege and nor could she. Rather, when the Kumars' attorney offered to arrange a new closing date to give plaintiff the opportunity to fulfill her contractual obligations, plaintiff instructed defendants, for the fourth time, to return the Kumars' deposit. Def. Mot. Summ. J., Exh. D-25.

Plaintiff's complaint also alleged that defendants committed malpractice by failing to condition the return of the Kumars' down payment on a release of their rights pursuant to the real estate contract. There can be no doubt, however, that the Kumars were entitled to the unencumbered return of their deposit given plaintiff's refusal to go through with the closing. Furthermore, by her own admission, plaintiff demanded that defendants return the down payment to the Kumars at least four times and advised the law firm that she would retain new counsel if they failed to do so. *See id.* Thus, the alleged failure of defendants to condition return of the down payment does not amount to legal malpractice.

Additionally, the complaint alleged that defendants committed legal malpractice by failing to advise plaintiff to resign as trustee of her revocable trust. Having held that the trust was invalid at its inception, the law firm's alleged failure to advise plaintiff to resign as trustee of a non-existent trust cannot form the basis of a legal malpractice claim.

Plaintiff also alleged that defendants were negligent by failing to advise her to accept settlement offers in the specific performance litigation. As defendants point out, however,

---

2. The facts and relevant law are discussed at length in the Order denying defendants' motion for summary judgment.

plaintiff neither alleges causation, i.e., that she would have accepted the settlement offers, nor does the record in this case so demonstrate. *See Bauza v. Livington*, 836 N.Y.S.2d 645, 647 (N.Y. App. Div. 2007) ("Here, the plaintiffs failed to demonstrate that, but for the defendants' alleged negligence, they would have accepted the offer of settlement and would not have sustained any damages."); *Cannistra v. O'Connor, McGuinness, Conte, Doyle, Oleson & Collins*, 728 N.Y.S.2d 770, 772 (N.Y. App. Div. 2001) ("Here, the plaintiffs failed to demonstrate that, but for the defendants' alleged negligence, they would have accepted the County's settlement offer and not have sustained any damages."). By plaintiff's own admission, offers to settle were communicated to her but none were accepted. Def. 56.1(a) Stmt. ¶ 48; Plt. 56.1(b) Stmt. ¶ 48. Nor does the record demonstrate that plaintiff would have settled based on her attorneys' advice. Given the foregoing, defendants' motion for summary judgment on this portion of plaintiff's legal malpractice claim is granted.

Finally, plaintiff complains that defendants were negligent in appealing Judge Feinman's decision granting the Kumars specific performance rather than waiting until final judgment in the case. In April 2005, New York's Appellate Division granted defendants' request for a stay while they appealed Judge Feinman's decision. In August 2005, the Appellate Division dismissed the appeal of its own motion because there is no appeal from a decision. Plaintiff contends that the matter was further delayed by defendants' conduct and that she incurred additional and unnecessary attorneys' fees.

As the facts demonstrate, however, plaintiff retained the right to take an appeal, and in fact did appeal, after final judgment in favor of the Kumars was entered with the Nassau County Clerk's office in October 2005. Because plaintiff did not lose the right to appeal Judge

Feinman's decision granting the Kumars specific performance, the Court holds that she did not suffer the type of damages necessary to state a legal malpractice claim.

Accordingly, given all of the foregoing and upon reconsideration, defendants' motion for summary judgment on plaintiff's legal malpractice claim is granted not because plaintiff and her trust were the same entity for the purpose of conveying the property, but because the trust was invalid from its inception. Plaintiff could not have used the defense that she was neither an owner nor a signatory to the real estate contract in the specific performance action because her property was never transferred to the non-existent and invalid trust. She cannot demonstrate, therefore, that defendants committed malpractice by not raising the lack of ownership defense and by admitting that plaintiff, and not the trust, owned the property in her answer to the Kumar's complaint. Plaintiff's additional allegations did not amount to legal malpractice as demonstrated above. Thus, there is no basis for plaintiff's legal malpractice complaint.

### 2. Plaintiff's Claim for Rescission of the Fee Agreement

In their motion for summary judgment, defendants also moved for judgment on plaintiff's claim for rescission of the parties' fee agreement and disgorgement of legal fees billed on and after August 15, 2003.[3] In its previous Order, the Court declined to address this claim until plaintiff's legal malpractice claim was determined. Having granted judgment to defendants on that claim, the undersigned will consider defendants' motion for summary judgment on plaintiff's claim for rescission of the parties' fee agreement.

"Rescission is defined as the act of abrogating, cancelling, vacating or annulling; the

---

3. As set forth in the facts in the March 6, 2013 Order, August 15, 2003 was the day of the scheduled closing between plaintiff and the Kumars, which plaintiff declined to attend on the basis she could not convey clear title.

undoing of a thing." *Carlson v. Shepard Pontiac, Inc.*, 314 N.Y.S.2d 77, 80 (N.Y. Sup. Ct. 1970). "The purpose of rescission is to restore the parties to the contract to the status, as nearly as may be possible, existing at the time immediately prior to the making of the contract." *Id.* It is within a court's equitable powers to order the rescission of a contract where injury will result from its enforcement. *Gantell v. Friedmann*, 197 N.Y.S.2d 605, 608 (N.Y. Sup. Ct. 1959).

Under New York law, the "[r]escission of a contract is 'an extraordinary remedy.' " *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 436 (S.D.N.Y. 2005) (quoting *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 143 (2d Cir. 2000)). Thus, rescission is "appropriate only where the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Krumme*, 238 F.3d at 143 (quoting *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980)). "Because rescission is an equitable remedy, it 'will not be granted unless plaintiff lacks an adequate remedy at law.' " *C3 Media*, 419 F. Supp. 2d at 435 (quoting *Faden Bayes Corp. v. Ford Motor Co.*, No. 97 Civ. 1867, 1997 WL 426100, at *2 (S.D.N.Y. July 30, 1997)).

Plaintiff's complaint alleges that the fees billed and collected by defendants on and after August 15, 2003 were unreasonable and the agreement to pay those fees is invalid and unenforceable. Plaintiff also alleges that defendants were unjustly enriched by collecting fees from plaintiff which were excessive, unreasonable and improper. Thus, according to plaintiff, equity and good conscience demand the return of those fees and plaintiff is entitled to rescind the fee agreement and to restitution of the monies paid to defendants.

In support of their motion for summary judgment, defendants argue that plaintiff's rescission and disgorgement claims are duplicative of her legal malpractice claim in that both seek to recover monies sought in the malpractice claim.

Defendants' motion for summary judgment on plaintiff's claim for rescission is granted because plaintiff has not demonstrated that she lacks an adequate remedy at law, i.e., money damages, as compensation for defendants' alleged malpractice. *See Rudman v. Cowles Commc'ns, Inc.*, 280 N.E.2d 867, 874 (N.Y. 1972) ("Moreover, the equitable remedy is to be invoked only when there is lacking complete and adequate remedy at law and where the status quo may be substantially restored."); *C3 Media*, 419 F. Supp. 2d at 436 ("Where the plaintiff can fully reap the benefit of its bargain through an award of legal damages, there is no call to invoke the equitable powers of the court and rescind the contract."); *Knoll v. Equinox Fitness Clubs*, No. 02 Civ. 9120, 2003 WL 23018807, at *6 (S.D.N.Y. Dec. 22, 2003) (holding that rescission appropriate "where the non-breaching party has been deprived of the reasonably expected benefit of the bargain in a way that cannot be compensated").

Moreover, defendants' motion for judgment on plaintiff's legal malpractice claim has been granted and plaintiff states no other grounds which would entitle her to rescind the parties' fee agreement. Nor would granting rescission put this case at its previous status quo because the Kumars eventually purchased plaintiff's real property despite her initial refusal to close the deal in August 2003.

Because judgment was granted to defendants on plaintiff's claim for rescission, she is not entitled to disgorgement. *See Goldstein v. Cogswell*, No. 85 Civ. 9256, 1992 WL 131723, at *19 (S.D.N.Y. June 1, 1992) (holding that when rescission is granted, the payee is entitled to

disgorgement of monies paid pursuant to the contract).

For these reasons, defendants' motion for summary judgment on plaintiff's rescission and disgorgement claims is granted.

### 3. Plaintiff's Request for a Declaratory Judgment

Plaintiff also seeks a declaratory judgment that she is not indebted to defendants or the law firm for any amount of money, including the $28,220.56 defendants claim is due for legal services. In their motion for summary judgment, defendants argue that the Court should exercise its discretion and dismiss plaintiff's request.

Pursuant to the Declaratory Judgment Act:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. "A declaratory judgment action is ripe for adjudication if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013) (quoting *In re Prudential Lines Inc.*, 158 F.3d 65, 70 (2d Cir. 1998)).

Summary judgment having been granted to defendants on plaintiff's legal malpractice and rescission claims, there is no substantial controversy between the parties that warrants the issuance of a declaratory judgment. Plaintiff's request is therefore denied.

### C. Defendants' Counterclaims

In their original motion, defendants asked for summary judgment on the three claims in

their answer, which concern monies purportedly owed to them by plaintiff for outstanding legal fees and costs. Previously, the Court declined to address these counterclaims because of the outstanding material issues of fact with respect to plaintiff's legal malpractice claim. Having determined that defendants are entitled to summary judgment on that claim, however, it now turns to defendants' counterclaims.

Defendants seek the sum of $28,220.56 plus interest. They set forth three theories of recovery: (1) quantum meruit; (2) breach of contract; and (3) account and demand stated. Apparently, there was no written agreement between the parties with respect to retaining defendants, hourly billing or costs. Nor does it appear that defendants submitted time records or evidence of plaintiff's costs. In light of that and in the interests of fairness and justice, the amount owed by plaintiff to defendants, if anything, shall be determined based on a quantum meruit theory.

Accordingly, the remainder of this case is hereby referred to Magistrate Judge A. Kathleen Tomlinson to report and recommend on the amount of legal fees and costs due to defendants based on quantum meruit. The parties are hereby directed to communicate with Magistrate Judge Tomlinson's Chambers to arrange a briefing schedule.

### III. Conclusion

For the foregoing reasons, defendants' motion for reconsideration is hereby **GRANTED** and summary judgment is granted in favor of defendants on all of plaintiff's claims and the complaint is dismissed in its entirety. Defendants' counterclaim for legal fees and costs is to be determined under a quantum meruit theory and is referred to Magistrate Judge A. Kathleen

Tomlinson to report and recommend to the undersigned.

**SO ORDERED.**

Dated: August 27, 2013
      Central Islip, New York

                                            Thomas C. Platt, U.S.D.J.