UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------
ELIZABETH THIERIOT, individually and
as TRUSTEE of the ELIZABETH
THIERIOT REVOCABLE TRUST, and the
ELIZABETH THIERIOT REVOCABLE
TRUST,

                        Plaintiffs,          **MEMORANDUM AND ORDER**
                                                      **07-CV-5315 (DRH) (AKT)**
      -against-

JASPAN SCHLESINGER HOFFMAN, LLP,
STEPHEN P. EPSTEIN, LISA M. GOLDEN,
ALAN K. HIRSCHHORN, and SETH H. ROSS,

                        Defendants.

-------------------------------------------------------------X
**APPEARANCES:**

**For the Plaintiffs:**
**THEODORE S. STEINGUT**
One Whitehall Street, 17th Floor
New York, NY 10004
By:    Theodore S. Steingut, Esq.

**For the Defendants:**
**WALSH, MARKUS, McDOUGAL & DeBELLIS, LLP**
229 Seventh Street
Garden City, NY 11530
By:   Paul R. McDougal, Esq.

**Hurley, Senior District Judge:**

       Elizabeth Thieriot ("Thieriot" or "plaintiff") and the Elizabeth Thieriot Revocable Trust (collectively "plaintiffs") commenced this action alleging malpractice claims against the law firm Jaspan Schlesinger Hoffman, LLP ("Jaspan") and four of its partners, Stephen P. Epstein, Lisa M. Golden, Alan K. Hirschhorn, and Seth H. Ross (collectively "defendants") with respect to defendants' representation of plaintiffs pursuant to a sale of property located in Sands Point,

New York ("the House" or "the Property"). The Court assumes familiarity with the facts as set forth in prior orders in this case.

Presently before the Court are the parties' motions in limine in advance of a trial scheduled to commence on November 7, 2016. Some of these motions were resolved at a hearing on March 14, 2016. However, to the extent at the hearing the Court reserved decision or requested further briefing, the remaining motions are addressed below.

### I. Damages

Plaintiffs' position with regard to damages is set out in the Third Amended Pre-trial Order as follows:

> Plaintiffs contend that their provable damages total $2,200,000. The damages are composed of (i) $900,000 in out of pocket expenses [incurred in retaining ownership of the house between 2003 and 2007]; (ii) estimated interest thereon in the amount of $730,000 (9% interest for 8 years since 2007 when the house was sold); (iii) $560,000 in prejudgment interest on the funds that Plaintiffs should have received on the sale of the house in 2003 were it not for Defendants' legal malpractice running through 2007 when the house was actually sold and the proceeds received by plaintiffs; and (iv) $200,000 to a high of $500,000 representing the difference in the price the house was sold for under the 2003 contract and the amount Plaintiff could have obtained from back up buyers at that time or the fair market value of the house in early 2006 when Plaintiff could have succeeded in the underlying litigation had defendants as her attorneys properly defended her therein.

(Third Amended Pre-trial Order at 8.) Defendants contend that the Court should prohibit plaintiffs from presenting evidence at trial regarding each of these damages claims.

Generally, "[d]amages in a legal malpractice case are designed to make the injured client whole." *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y. 3d 438, 443 (2007) (internal quotation marks and citations omitted). Moreover, "[i]n an action to recover damages for legal malpractice, a plaintiff must demonstrate that the attorney failed to exercise the ordinary

reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages." *Id*. at 442 (internal quotation marks and citations omitted).

The Court will address defendants' challenges to plaintiffs' damages claims in turn below.

*Lost Profits*

Plaintiffs' fourth item of damages set forth in the Third Amended Pre-trial Order seeks the difference in price between the amount the House was ultimately sold for to the Kumars in 2007 and the amount plaintiffs' allege it could have been sold for to back-up buyers, Felix and Viktoria Satter ("the Satters"), in 2003 prior to the filing of a lis pendens concerning the specific performance action ("the 2003 Lost Profits Claim"). They also assert that they could have sold the House to unnamed backup buyers in 2006 for more than it was ultimately sold for to the Kumars ("the 2006 Lost Profits Claim"). Collectively, the Court will refer to these two claims as "the Lost Profits Claim." Defendants argue that the plaintiffs' Lost Profits Claim "fails because it is impermissibly speculative, illusory and unduly prejudicial." (DE[1] 109 at 9.)

The Court of Appeals in *Kenford Co. v. County of Erie*, 67 N.Y. 2d 257, 261 (1986) stated the following with respect to lost profits:

> First, it must be demonstrated with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible, or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes. In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.

---

[1] Due to the voluminous amount of briefs filed with respect to the parties' motions in limine, to avoid confusion, the Court will refer to them by their Docket Entry Number ("DE").

3

*Kenford*, 67 N.Y. 2d at 261 (internal citations omitted).[2]

Defendants argue that the 2003 Lost Profits Claim "impermissibly rests on what could have or might have happened during the time between the date the contract was terminated and the date the lis pendens [was] filed." (DE 109 at 10.) They assert that the claim "assumes the unnamed parties would have negotiated a contract, ordered, reviewed and cleared title exceptions, lined up financing and closed all within one week." (*Id*.)

Plaintiffs, however, refute that the lost profits claims are too speculative. As part of their submission, they have provided the Court with an "Offer of Proof on the Satter Transaction," which sets forth the evidence they expect to present at trial in support of the 2003 Lost Profits Claim. (DE 119.) Plaintiffs submit that based on testimony expected from Thieriot at trial and documents exchanged by the parties, including a lease agreement between Thieriot and the Satters, "there is sufficient evidence to submit the issue to the jury and for the jury to conclude that it was more likely than not that the Satters would have consummated the transaction." (*Id.* at 6.) According to the offer of proof, Thieriot would testify, *inter alia*, that in the summer of 2003, the Satters "expressed a willingness to pursue the house if the Kumar contract did not close" and "proposed to purchase the house for $2,050,000" at that time. (*Id*. ¶ 5.) Additionally, plaintiffs submit that Thieriot would testify that in early September 2003 after the commencement of the specific performance action, the Satters moved into the House pursuant to a lease agreement with Thieriot. (*Id*. ¶ 11.)

---

[2] Although *Kenford* was a breach of contract action, the Court joins with other district courts in this Circuit that have applied its rule regarding lost profits in the malpractice context. *See, e.g., Treasure Lake Assocs. v. Oppenheim*, 993 F. Supp. 217 (S.D.N.Y. 1998); *Schonberger v. Serchuk*, 742 F. Supp. 108, 114 (S.D.N.Y. 1990).

4

The Court finds, however, that whether the Satters would have actually purchased the House prior to the commencement of the specific performance action or even at a later time is pure speculation and not capable of proof with a reasonable certainty based on the evidence contained in plaintiffs' offer of proof.[3] *See Bua v. Purcell & Ingrao, P.C.*, 99 A.D.3d 843, 848 (2d Dep't 212) (barring lost profits claim where "plaintiff's contention that the alleged malpractice resulted in legally cognizable damages [was] conclusory and speculative inasmuch as it [was] premised on decisions that were within the sole discretion of the buyer"); *Treasure Lake Assocs.*, 993 F. Supp. at 221 (finding that "plaintiffs' claim that [a] Notice of Pendency prevented the plaintiffs from realizing 'enormous' profits [was] pure speculation, which [was] not sufficient to warrant a trial on the issue of damages"). Additionally, plaintiffs have not offered any proof with respect to another backup buyer's willingness to purchase the House either in 2003 or 2006. Accordingly, the Lost Profits Claim is too speculative. As a result, the Court bars plaintiffs from pursuing the Lost Profits claim at trial.

*Out of Pocket Expenses and Lost Opportunity Costs*

Plaintiffs argue that they are entitled to out of pocket expenses because "if Plaintiffs did not continue to own the house they would not have had to pay taxes and insurance; they would not have had to rent [the House to] and then sue the Saters[4]; and they would not have had travel and other expenses in connection with house upkeep . . . ." (DE 110 at 15.) Although the Court

---

[3] The Court notes that plaintiffs do not suggest that testimony from the Satters would aid in proving the Lost Profits claim and have utterly opposed the introduction of testimony from the Satters throughout this litigation. Moreover, defendants' motion to reopen discovery to add the Satters to their witness list was denied by Magistrate Judge Tomlinson on September 30, 2009 (DE 46) and defendants' motion to introduce the Satters' testimony from a deposition relating to litigation with Thieriot in 2005 was also denied by Judge Tomlinson on July 2, 2012 (DE 71) and upheld by Judge Platt on January 12, 2013 (DE 75).

[4] Plaintiffs refer to the backup buyers as both "the Satters" and "the Saters," though both spellings seem to indicate the same backup buyers.

5

has significant reservations as to the recoverability of some of these items, defendants have not presented sufficient legal authority to warrant a ruling that plaintiffs are not entitled to pursue such items as a matter of law.

Additionally, plaintiffs claim lost opportunity costs consisting of $560,000 in prejudgment interest on the funds that Plaintiffs should have received on the sale of the house in 2003 were it not for Defendants' legal malpractice running through 2007 when the House was actually sold and the proceeds received by plaintiffs. To the extent this amount is based on the proceeds plaintiffs would have obtained from a 2003 sale to the Kumars,[5] the Court will not limit plaintiffs from seeking such recovery at this stage.

*Legal Fees*

"Thieriot seeks recovery of $115,496.24 in legal fees," $44,715.62 of which it claims is owed to Jaspan, $48,562.00 of which it claims is owed to the Law Offices of Barry Manson ("the Manson Firm"), and $22,219.02 of which it claims is owed to Alexander Sklavos ("Skalvos"). (DE 109 at 19.) The monies owed to Jaspan were for services rendered in connection with the sale of the House and the Specific Performance Action. The monies owed to the Manson firm are in connection with an action commenced on behalf of Thieriot against the Satters in 2005 based on a breach of the lease agreement with Thieriot. The monies paid to Sklavos were in connection with an action Sklavos commenced on behalf of Thieriot in 2006 over an investment Thieriot had made at the suggestion of Felix Satter.

Both parties relying on *DePinto v. Rosenthal & Curry*, 237 A.D.2d 482, 482 (1997), agree that "litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct can be charged to the attorney." Moreover, to the

---

[5] As discussed above, the Court finds any damage claim based on a sale to the Satters too speculative.

extent these fees were "incurred in consequence of [defendants'] malpractice [in attempt] to repair the harm done by the malpractice," they are recoverable. *Baker v. Dorfman*, 239 F.3d 415, 426 (2d Cir. 2000). While the Court recognizes the somewhat attenuated nature of the Manson and Sklavos fees, defendants have not convinced the Court that plaintiffs should be barred from seeking such fees as a matter of law. As a result, plaintiffs are permitted to seek such fees and the jury will consider whether the fees were proximately caused by defendants' alleged malpractice.

*Prejudgment Interest on the Lost Opportunity Costs*

Additionally before the Court, is plaintiffs' "motion to amend their voluntary disclosures and the pre-trial order" in order "to make clear that, if liability is established, Plaintiffs are entitled to an award of pre-judgment interest at the statutory rate on the prejudgment interest component of damages representing loss of the use of the proceeds of the sale of the house between 2003 and 2007 to the date of the judgment." (DE 108 at 1.) According to plaintiffs, "[i]n other words, the first award [of prejudgment interest] would compensate plaintiffs for their loss of use of proceeds during the 2003-2007 time period, but Plaintiffs will not receive those earnings until judgment is entered and satisfied so that the supplemental award of prejudgment interest on that amount is both necessary and fair." (*Id*. at 2.)

Defendants argue that plaintiffs have not met the standard set forth in FRCP 16(e) providing that the court "may modify the order issued after a final pretrial conference only to prevent manifest injustice." Additionally, defendants argue that plaintiffs must meet the standard of Rule 16(b), which states that a scheduling order may be modified only for good cause. According to defendants, pursuant to the scheduling order in the case, the final pre-trial order was to be filed by August 14, 2009.

7

In their reply, plaintiffs argue that since "prejudgment interest need not be raised even prior to entry of a liability finding or judgment," they "were not required to have computed (or mentioned) prejudgment interest at all in their complaint, Rule 26 disclosures or in the Rule 16 pretrial order." (DE 112 at 1.) Specifically, defendants rely on Rule 54(c) providing that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Defendants do not respond to this argument.

If Rule 54(c) is applicable, as plaintiffs suggest, it seems plaintiffs' motion to amend is unnecessary. Indeed, the Second Circuit, in addressing the issue of prejudgment interest, has held that even where a party has not sought prejudgment interest at any point during a proceeding, "an award of prejudgment interest [may be] mandated by the interests of justice on the record before" the court so long as the "award [is] consistent with state and federal law." *Newburger, Loeb & Co., Inc. v. Gross*, 611 F.2d 423, 433 (2d Cir. 1979); *see also Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) ("[I]n diversity cases, it is not necessary for the plaintiff's pleading to contain a prayer or other request for pre-judgment interest," as "[i]f state substantive law provides for the recovery of interest, Federal Rule of Civil Procedure 54(c) requires that such be included where appropriate.").

Accordingly, the Court finds that to the extent plaintiffs did not specifically request at an earlier point in this litigation the prejudgment interest now sought, they may still be entitled to seek such relief and their motion to amend the pre-trial disclosures is granted. The Court notes, however, that it makes no determination at this stage as to whether plaintiffs are actually entitled to the prejudgment interest sought.

## II.     *Inconsistent Claims*

8

Defendants argue that "[a]t this stage of the litigation Thieriot cannot continue to maintain inconsistent positions." (DE 109 at 7.) For example, defendants contend that Thieriot cannot maintain that "Jaspan failed to properly advise her to sell the House to the Kumars" as well as that it "should have advised her to sell the House to backup buyers." (*Id*.) As discussed above, however, the backup buyer claim is too speculative, and as a result, the Court need not resolve the issue of its purported inconsistency.

With respect to defendants' other alleged inconsistencies, the Court finds no reason to limit plaintiffs' pursuit of them at this time. Defendants point to two other claimed inconsistencies. First, defendants argue that "Thieriot's claim that Jaspan erred in not conditioning the return of the Kumar Contract deposit on obtaining a release[6] is . . . inconsistent with" her theory that defendants should have advised her to sell the House to the Kumars. (*Id*. at 8.) Second, defendants argue that plaintiffs' claims of malpractice related to the specific performance action are inconsistent with the claim that defendants should have advised Thieriot to sell to the Kumars because if she had sold to the Kumars, there would not have been a specific performance action. (*Id*. at 8-9.)

The Court is not convinced that these theories are inconsistent as opposed to separate theories of liability. For example, defendants could be liable for failing to advise plaintiffs to sell to the Kumars, and also for acts of malpractice committed in the specific performance action, which ensued as a result of their failure to advise plaintiffs to go through with the Kumar sale. Moreover, to the extent any of plaintiffs' theories are inconsistent, the Court is aware of the "baseline rule that a plaintiff is generally permitted to plead and prove his or her case on

---

[6] This claim is stated in the Complaint as follows: "Defendants failed to properly tender the return of the Purchasers' down payment on condition that acceptance thereof would constitute a full release of their rights under the sales contract." (Complaint ¶ 51.)

alternative and sometimes inconsistent theories of liability." *Bussolari v. City of Hartford*, 2016 WL 4272419, *4 (D. Conn. Aug. 12, 2016). Moreover, CPLR § 3002, "Actions and relief not barred for inconsistency," which the defendants cite, does not persuade the Court that plaintiff must elect a certain theory of liability at this stage. Pursuant to the commentary to that section, "[w]hen P has joined in one action two or more remedies arising out of the same wrong, and they are mutually exclusive or otherwise inconsistent, at some point in the action P may have to choose which one P wants." The commentary explains that the timing of such election is up to the trial judge, but "it would take a reason special enough to require that P forfeit a possible theory of recovery before getting down to the trial." "The case can even go to the jury . . . for fact-finding relative to two inconsistent grounds, " and "the verdict or decision may ultimately make the election for P and obviate a choice by P altogether." Accordingly, even if plaintiffs' theories could be construed as inconsistent, the Court finds it too drastic at this stage to require plaintiffs to forfeit a possible theory of recovery.

### III. *The Berkowitz Report*

Defendants contend that plaintiffs should be prohibited from asserting claims of malpractice not pleaded in the Complaint, but contained in plaintiffs' expert report of Morrell Berkowitz ("Berkowitz Report," DE 67-1, Ex. 1). Specifically, defendants argue that the Berkowitz Report contains the following "[a]cts and omissions of purported malpractice not alleged in the Complaint:" (1) failing to advise Thieriot "to sell to both the Kumars and unnamed backup buyers in August 2003;" (2) "failing to advise her to sell after the Kumars' counsel indicated Thieriot no longer needed to get an affidavit from her husband;" (3) "failing to advise her to attend the August 15, 2003 closing and fulfill her duties of good faith in dealing with the title company and the purchaser's attorney in resolving title exceptions." (DE 109 at 21.)

10

Plaintiffs "believe the Complaint liberally construed embraces each of the specific acts of malpractice in [the Berkowitz Report]," (DE 110 at 19), however they do not point to any specific facts from the Complaint to support this statement, leaving the Court to merely speculate as to how the Complaint adequately pleads such claims. In the alternative, plaintiffs seek to amend the Complaint to add claims of malpractice contained in the Berkowitz Report.

To the extent defendants contest the propriety of plaintiffs' Lost Profits claim, the Court has already ruled that damages for such a claim are barred as they are too speculative, and so it need not address that claim again here. Moreover, to the extent defendants contend that the Complaint does not sufficiently allege malpractice on the basis that defendants should have advised Thieriot to sell the House to the Kumars after the Kumars' counsel advised that plaintiffs no longer needed an affidavit from Thieriot's husband, the Complaint liberally construed alleges facts sufficient to support such a claim. In particular, the Complaint alleges that after the Kumars' counsel communicated to defendants that the title company had waived the affidavit requirement, "Defendants advised Plaintiffs that, in their opinion, the contract for the sale of [the House] was properly terminated and that Plaintiffs could refuse to close . . . on the basis that clear title as required by the title report was not available." (Complaint ¶¶ 23-24.) Similarly, the Complaint contains facts sufficiently alleging that defendants improperly exposed Thieriot to the title company's claims that she violated her duties of good faith and fair dealing. Specifically, plaintiffs alleged that defendants "failed to properly conduct themselves as attorneys similarly situated would have in dealing with the title company and purchasers' counsel prior to the scheduled closing date, thus exposing Plaintiffs to a substantial claim in litigation that their pre-closing efforts to clear title were not undertaken in good faith." (*Id*. ¶ 49.) As a result, the Court need not address plaintiffs' request to amend the Complaint.

## Conclusion

For the foregoing reasons, defendants' motions in limine are granted in part and denied in part. Specifically, defendants' motion to bar plaintiffs from pursuing the Lost Profits Claim is granted. However, defendants' motion to prohibit plaintiffs from pursuing their other damage theories is denied, as is defendants' motion to prohibit purportedly inconsistent claims as well as claims contained in the Berkowitz Report that it purports are not contained in the Complaint. Plaintiffs' motion to amend its pre-trial order to include a claim of pre-judgment interest on the Lost Opportunity Claim is granted.

**SO ORDERED.**

Dated: Central Islip, New York
October 18, 2016

_____/s/_____
Denis R. Hurley
United States District Judge